ORDERED.

**Dated:  January 14, 2022**

Jerry A. Funk
United States Bankruptcy Judge

## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

In re:                                                    Case No.: 3:21-bk-624-JAF

ANGELO LUIS HERNANDEZ, JR.,                  Chapter 7

      Debtor.

_____/

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

This case came before the Court upon the United States Trustee's Motion to Dismiss Pursuant to 11 U.S.C. Section 707(b)(1) Based on Presumption of Abuse Arising Under 11 U.S.C. Section 707(b)(2) and for Totality of the Circumstances under 11 U.S.C. Section 707(b)(3) (the "Motion to Dismiss") (Doc. 21).  On October 5, 2021, the Court conducted a trial on the Motion to Dismiss.  At the conclusion of the trial, the Court took the matter under advisement.  Upon the evidence and the applicable law, the Court makes the following Findings of Fact and Conclusions of Law.

## Findings of Fact

On March 16, 2021, the Debtor filed this voluntary Chapter 7 petition.  On March 30, 2021, the Debtor filed his bankruptcy schedules and Chapter 7 Means Test Calculation (the "Means Test").  The Debtor's Means Test indicated that he had monthly disposable income of $214.91.  Initially, the United States Trustee (the "U.S. Trustee") argued that the Debtor understated his income and overstated certain expenses on the Means Test.  After making adjustments to the Means Test, the U.S. Trustee asserted that the Debtor's monthly disposable income was $1,724.89.  On September 30, 2021, the Debtor filed an Amended Means Test, claiming a deduction for a $270.83 monthly contribution for the care of his mother.  The Debtor's Amended Means Test reflects a negative monthly disposable income of $226.08.  As a result, the U.S. Trustee informed the Court that she no longer seeks to have the case dismissed pursuant to § 707(b)(2) and now proceeds pursuant to § 707(b)(3) only.

The Debtor owns a 2008 Honda Civic which had approximately 261,000 miles on it on the petition date. The Civic is paid off. The Debtor also owns a 2014 Dodge Ram truck which had approximately 91,000 miles on it on the petition date.  The Debtor testified that the Civic is his "daily driver" that he drives to work.  He testified that he uses the Dodge truck to pull his 2018 Sea Fox boat.  The Debtor seeks to retain and reaffirm his debts on the Dodge truck and the boat.  The Debtor has not filed a reaffirmation agreement as to the Dodge truck, but his schedules indicate the monthly payments on the truck are $290.00.  According to the reaffirmation agreement filed with the Court on the boat, the Debtor owes approximately $57,000.00 on the boat, the boat has a market value of approximately $44,000.00, and the monthly payments are approximately $497.00.

The Debtor's Schedule I claims: (i) his gross monthly income is $6,862.92; (ii) his monthly tax liability is $1,365.90; (iii) his monthly voluntary contribution to a retirement plan is $300.09; (iv) his monthly health insurance deduction is $223.32; and (iv) his charity deduction totals $10.84, resulting in a net monthly household income of $4,962.27. The Debtor's Schedule J lists his monthly household expenses as $4,926.00, which includes the $497.00 monthly installment payment on the boat, the $290.00 monthly installment payment on the Dodge truck, and a $157.00 miscellaneous expense. Based on the Debtor's calculations, his household income exceeds his household expenses by $36.77.

The U.S. Trustee asserts that the Debtor's gross monthly income is actually $7,143.14, his monthly tax liability is $1,494.53, his monthly health insurance deduction is $231.80, and his charity deduction is $10.84. The Trustee asserts that the Debtor's monthly income should not be reduced by his $300.09 monthly contribution to his retirement plan. Additionally, the Trustee asserts that the Debtor's monthly income should be increased by $306.41, which is one twelfth of the Debtor's $3,700.00 overpayment on his 2020 federal tax return, resulting in monthly household income of $5,712.38.

The Debtor's payment advices for the period from March 5, 2021 to September 3, 2021 reflect average monthly gross wages of $7,143.14 and a $1,494.53 monthly tax liability. (U.S. Trustee's Ex. 13). The Court finds it appropriate to reduce the Debtor's gross income by his $300.09 monthly contribution to his retirement plan, as well as the $231.80 for health insurance and $10.84 for a charitable deduction, resulting in monthly net income from wages of $5,105.97. Based upon the Court's review of the Debtor's recent tax returns (U.S. Trustee's Exs. 18-20) and the Debtor's gross wages and federal income tax withholding through the end of August (U.S. Trustee's Ex. 13), it is likely the Debtor will be entitled to a tax refund for 2021. While the

amount of the Debtor's refund is impossible to precisely determine, the Court finds that it will be between $200.00 to $300.00 monthly, resulting in a monthly household income of approximately $5,300.00 to $5,400.00.

The Debtor lists $125,475.34 in non-priority unsecured debt on his bankruptcy schedules consisting of credit card debt, student loan debt, and a deficiency judgment. The Debtor's debts are primarily consumer in nature.

## Conclusions of Law

"The principal purpose of the Bankruptcy Code is to grant a 'fresh start' to the 'honest but unfortunate debtor.'" Marrama v. Citizens Bank of Mass., 549 U.S. 365, 367 (2007). "In enacting the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ('BAPCPA'), Congress made sweeping changes to the Bankruptcy Code to address perceived abuses of the bankruptcy system and to ensure that debtors with the ability to repay their debts do so." In re Norwood–Hill, 403 B.R. 905, 907-908 (Bankr. M.D. Fla. 2009). "In a Chapter 7 proceeding, an individual debtor receives an immediate unconditional discharge of personal liabilities for debts in exchange for the liquidation of all non-exempt assets." Schultz v. U.S., 529 F.3d 343, 346 (6th Cir. 2008). However, it is well-established that a debtor has no constitutionally protected right to receive a discharge in bankruptcy. In re Jacob, 447 B.R. 535, 538 (Bankr. N.D. Ohio 2010) (citing Grogan v. Garner, 498 U.S. 279, 286 (1991)); See also In re Egebjerg, 574 F.3d 1045, 1048 (9th Cir. 2009) ("There is now no presumption favoring Chapter 7 relief, but an emphasis on repaying creditors as much as possible."). Discharge "is, instead, a legislatively created benefit that Congress may withhold at its discretion." In re Jacob, 447 B.R. at 538.

"To that end, Congress has prescribed conditions under which a debtor's bankruptcy case must be dismissed." Id. When Chapter 7 relief is sought, the conditions mandating dismissal are

set forth in § 707 of the Bankruptcy Code.  Section 707(b)(1) provides that a court may dismiss a Chapter 7 case filed by an individual whose debts are primarily consumer debts if it finds that the granting of relief would be an abuse of the provisions of Chapter 7.  The Trustee seeks to have the case dismissed pursuant to § 707(b)(3)(B), which provides: "In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter in a case in which the presumption in paragraph (2)(A)(i) does not arise or is rebutted, the court shall consider [whether] (B) the totality of the circumstances … of the debtor's financial situation demonstrates abuse.  11 U.S.C. § 707.

A debtor's ability to pay, as measured by what he could pay in a hypothetical 13 case, is the primary but not conclusive factor a court must consider in a § 707(b)(3)(B) analysis. In re Norwood-Hill, 403 B.R. 905, 912 (Bankr. M.D. Fla. 2009).  That is, the ability to pay something, standing alone, is insufficient to warrant dismissal.  Id. (citing In re Degross, 272 B.R. 309, 313 (Bankr. M.D. Fla. 2001)).  The better reasoned analysis is one which considers a debtor's ability to pay along with other circumstances. In re Degross, 272 B.R. at 313.  If a debtor has the ability to pay something, the Court looks to the following factors, to the extent they are helpful, to determine whether they militate against or in favor of dismissal: 1) whether unforeseen or catastrophic events such as sudden illness, disability, or unemployment propelled the debtor into bankruptcy; 2) whether the debtor's standard of living has substantially improved as a result of the bankruptcy filing or essentially remained the same; 3) the debtor's age, health, dependents, and other family responsibilities; 4) the debtor's eligibility for Chapter 13 relief and whether creditors would receive a meaningful distribution in a Chapter 13 case; 5) the age of the debts for which the debtor seeks a discharge and the period over which they were incurred; 6) whether the debtor incurred cash advances and made consumer purchases far in excess of the ability to repay;

7) whether the debtor made any payments toward the debts or attempted to negotiate with creditors; and 8) the accuracy of the debtor's schedules and statement of current income and expenses. In re Norwood-Hill, 403 B.R. at 912.

As the Court noted, the Debtor's monthly net income from wages is $5,105.97. Adding the Debtor's anticipated pro-rated federal income tax refund of $200.00 to $300.00 results in a monthly household income of approximately $5,300.00 to $5,400.00.

The Court turns to the Debtor's expenses. The Trustee contends that the Debtor's monthly household income should not be reduced by the $497.00 monthly boat payment and the $157.00 miscellaneous expense. The Court agrees. The Court does not find it appropriate for the Debtor to retain a boat with an approximate $500.00 monthly payment at the expense of his unsecured creditors who hold claims approximating $125,000.00. Additionally, the Debtor admitted that he does not know what the $157.00 miscellaneous expense represents. The Court finds that the $497.00 monthly boat payment and the $157.00 miscellaneous monthly expense are discretionary expenses which should be disallowed for purposes of calculating the Debtor's monthly disposable income. Taking into account the approximate $271.00 monthly that the Debtor contributes for his mother's care and the approximate $310.00 administrative expense of a Chapter 13, the Court finds that the Debtor would still be able to pay at least 22% of his unsecured debt over a 60-month period.[1]

Having found that the Debtor can pay a dividend to his unsecured creditors in a Chapter 13 case, the Court turns to whether there are any factors which weigh against dismissal. The Court finds that there are none. There were no unforeseen or catastrophic events which propelled the Debtor into bankruptcy. The Debtor has a stable job with no periods of

---

[1] The portion of the Debtor's $265.21 insurance payment attributable to the boat is also a discretionary expense which should not be taken into account in calculating his monthly disposable income.

unemployment and does not suffer from illness or disability.  The Debtor is eligible for Chapter 13 relief and can pay an approximate twenty-two percent dividend to his unsecured creditors in a 60-month hypothetical Chapter 13 plan, a dividend the Court finds to be meaningful.  The Court finds that granting the Debtor a Chapter 7 discharge would constitute an abuse under § 707(b)(3) of the Bankruptcy Code.  Accordingly, the Court finds it appropriate to dismiss the case.

## Conclusion

The Debtor is eligible for Chapter 13 relief and can pay an approximate twenty-two percent dividend to his unsecured creditors in a 60-month hypothetical Chapter 13 plan, a dividend the Court finds to be meaningful.  The Court finds that granting the Debtor a Chapter 7 discharge would constitute an abuse under § 707(b)(3) of the Bankruptcy Code.  Accordingly, the Court finds it appropriate to dismiss the case.  The Court will enter a separate order consistent with these Findings of Fact and Conclusions of Law.

Attorney Edward P. Jackson is directed to serve a copy of this order on interested parties who do not receive service by CM/ECF and file a proof of service within three days of entry of this order.